1
2
3
4
5
6
7    **UNITED STATES DISTRICT COURT**
8    **DISTRICT OF NEVADA**
9    * * *
10   Maria Tsatas, *et al*.,                    Case No. 2:20-cv-02045-RFB-BNW
11              Plaintiffs,
                                                 **ORDER re ECF Nos. 66–73**
12        v.
13   Airborne Wireless Network, Inc., *et al.*,
14              Defendants.
15

16        Plaintiffs filed suit against several Defendants for fraud, breach of fiduciary duty, aiding

17   and abetting breach of fiduciary duty, conversion, intentional interference with contractual

18   relations, and breach of contract. ECF No. 1. The allegations involve fraudulent actions in

19   connection with the offer and sale of certain shares of Apcentive stock and the subsequent

20   exchange of certain shares of Apcentive stock for shares of Airborne stock.

21        Plaintiffs filed several motions to compel discovery from all Defendants. The Court

22   divides the Defendants and motions into three categories: (1) corporate Defendants, (2)

23   Defendants Daniels and Kabilafkas, and (3) the remaining individual Defendants.

24        As to the corporate Defendants, Plaintiffs filed a motion to compel discovery from

25   Defendant Airborne. ECF No. 66. Defendant Airborne responded at ECF No. 82, and Plaintiffs

26   replied at ECF No. 84. Plaintiffs also filed a motion to compel discovery from Defendant

27   Apcentive. ECF No. 67. Defendant Apcentive responded at ECF No. 82, and Plaintiffs replied at

28   ECF No. 85.

As to Defendants Daniels and Kabilafkas, Plaintiffs filed a motion to compel discovery from Daniels. ECF No. 68. Defendant Daniels responded at ECF No. 81, and Plaintiffs replied at ECF No. 83. Plaintiffs also filed a motion to compel discovery from Defendant Kabilafkas. ECF No. 69. Defendant Kabilafkas responded at ECF No. 81, and Plaintiffs replied at ECF No. 87.

As to the remaining individual Defendants, Plaintiffs filed a motion to compel discovery from Defendant Jason De Mos. ECF No. 70. Defendant Jason De Mos responded at ECF No. 83, and Plaintiffs replied at ECF No. 88. Plaintiffs also filed a motion to compel discovery from Defendant Marius De Mos. ECF No. 71. Defendant Marius De Mos responded at ECF No. 83, and Plaintiffs replied at ECF No. 89. Next, Plaintiffs filed a motion to compel discovery from Defendant Harris. ECF No. 72. Defendant Harris responded at ECF No. 83, and Plaintiffs replied at ECF No. 90. Lastly, Plaintiffs filed a motion to compel discovery from Defendant Warren. ECF No. 73. Defendant Warren responded at ECF No. 83, and Plaintiffs replied at ECF No. 91.

The Court held two hearings: One on October 26, 2021 involving the corporate Defendants, and one on October 28, 2021 involving the remaining Defendants. The parties are familiar with the arguments, so the Court does not repeat them here.

## I.    Overarching Applicable Law

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Pro. 26(b)(1). In other words, information is discoverable if it is (1) relevant, (2) proportional, and (3) not privileged.[1]

---

[1] Plaintiffs cite to *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). While parts of *Oppenheimer* remain good law, the Court understands that Rule 26 was amended after *Oppenheimer* was decided and that the scope of what is discoverable is likewise now different. To be clear, the definition of "relevant" did not change with the amendments to Rule 26. However, the Court recognizes evidence must be relevant to "any party's claim or defense" as opposed to "the subject matter involved in the pending action."

1    Although relevance for discovery purposes is defined "very broadly," *Garneau v. City of*

2    *Seattle*, 147 F.3d 802, 812 (9th Cir. 1998) (citation omitted), it is not without boundaries. *Rivera*

3    *v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2014) ("District courts need not condone the use of

4    discovery to engage in 'fishing expedition[s]'") (citation omitted). District courts have broad

5    discretion when determining relevancy for discovery purposes. *Mfg. Automation & Software Sys.,*

6    *Inc. v. Hughes*, Case No. CV 16-8962-CAS (KSX), 2017 WL 5641120, at *3 (C.D. Cal. Sept. 21,

7    2017).

8    The party seeking to compel discovery responses must make a threshold showing that the

9    discovery sought is relevant. *See, e.g., Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981

10   F.2d 429, 438–39 (9th Cir. 1992); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992);

11   *Guzman v. Lincoln Tech. Inst., Inc.*, No. 2:13-CV-2251-RFB-VCF, 2015 WL 1729711, at *1 (D.

12   Nev. Apr. 15, 2015).[2] This is a "relatively low threshold[.]" *Nat'l Rifle Ass'n of Am. v. Cuomo*,

13   332 F.R.D. 420, 428 (N.D.N.Y. 2019) (internal quotation marks and citation omitted). It merely

14   requires "the possibility of a nexus between the information sought and the claims or defenses of

15   a party." *Id*. That is, it is simply a tool used to ensure that before the gates to discovery are open, a

16   minimum showing has been made.

17   Once relevancy is shown, or if relevancy is plain from the face of the request, the party

18   who is resisting discovery has the burden to show that discovery should not be allowed.

19   *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The party resisting discovery

20   must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and

21   may not rely on boilerplate, generalized, conclusory, or speculative arguments. *F.T.C. v. AMG*

22   *Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (citations omitted).  "Boilerplate, generalized

23   objections are inadequate and tantamount to not making any objection at all." *Walker v.*

24   *Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (citations omitted). These

25

26   _____

27   [2] Many courts simply rely on the non-moving party demonstrating that the discovery sought is not relevant
     and do not address this threshold showing by the moving party. The requirement of a threshold showing makes sense
     given the language of Rule 26 (allowing parties to obtain information regarding matters relevant to a claim or

28   defense).

principles come directly from the plain text of the Federal Rules of Civil Procedure, which require objections to be stated with specificity. Fed. Rs. Civ. P. 33(b)(4); 34(b)(2)(B); 36(a)(5).

## II.     The Scope of the Court's Ruling

The first question the Court needs to determine is the scope of its ruling.

The discovery requests at issue can be divided into two categories: that which involves the SEC investigation and that which does not. Here, after Plaintiffs propounded discovery requests, Defendants responded by lodging a multitude of objections as to both categories of information sought. As a result, the parties met and conferred. At that juncture, corporate Defendants explained that they would not respond to *any* requests unless Plaintiffs agreed to withdraw the requests involving the SEC investigation.

Unable to come to an agreement, Plaintiffs filed their motions to compel. Prior to responding to the motions, Defendants produced some—but not all—of the requested discovery. Specifically, they only produced discovery as to the requests that did not involve the SEC investigation. Defendants then filed their responses to Plaintiffs' motions and maintain that the non-SEC requests have been mooted by virtue of the discovery produced after Plaintiffs' motions had been filed. Plaintiffs' replies mention that the discovery produced as to the non-SEC category was incomplete and requests that the Court order these Defendants supplement what has been produced.

Plaintiffs argue that pursuant to Fed. R. Civ. P. 37(a)(5), the Court is not limited in scope as to its ruling. The Court does not read Fed. R. Civ. P. 37(a)(5) to address the proper scope of rulings; the rule simply states that the moving party would be entitled to reasonable attorney fees and costs (subject to certain exceptions) if the discovery was provided after the motion was filed, which the Court will discuss below.

The Court has also reviewed the cases cited by Defendants (and the differentiations made by Plaintiffs) as to why it should or should not rule on the requests as to which discovery has been produced.[3] Given that Defendants have not been able to respond to Plaintiffs' replies outlining the

---

[3] The Court is not relying on the cases cited by Defendants on October 26, 2021, as they were raised for the first time in oral argument.

perceived deficiencies in the discovery productions, and consistent with Fed. R. Civ. P. 1, the Court, in its discretion, will limit its rulings to the requests for which no discovery has been provided—the SEC-related discovery.

As to the non-SEC discovery, the Court orders the parties to meet and confer within seven days of this Order and determine what needs to be supplemented. Having had the opportunity to read the arguments made by Plaintiffs as to the alleged deficiencies in production, it behooves Defendants to look carefully at the rules governing discovery (and applicable case law) when determining if and how discovery must be supplemented.[4] The supplementary discovery (to the extent Defendants believe that is appropriate) shall be due within 30 days of this Order. Should Plaintiffs perceive these new supplements to still be deficient, or should Defendants not produce any additional discovery, Plaintiffs are free to file a new motion.

**III.    Analysis**

**A.    Plaintiffs met the threshold showing of relevance as to discovery relating to the SEC case.**

The combination of the arguments presented in Plaintiffs' motions and the language of their requests establishes they have met the required low threshold of relevance. As they relate to the corporate Defendants, the requests are relevant to the fraud claim. As to Defendant Daniels, the requests are relevant to the fraud claim and (in lesser manner) to the remaining claims. As to Defendant Kabilafkas, the requests are relevant to the different claims against him. Lastly, as to all these Defendants, the requests are relevant to punitive damages.

There is no doubt that the SEC complaint addresses much of the conduct complained of in the instant complaint. In fact, the SEC complaint includes detailed information about *the manner* in which the allegations in the instant complaint were carried out. The discovery sought is part and parcel of the allegations here. While some of the requests predate the allegations in this case, they are still relevant to understanding the way the allegations were carried out.

---

[4] This includes the propriety of responses regarding possession, custody, and control without indicating whether they have previously made a diligent search and a reasonable inquiry for responsive documents, the propriety of stating they will produce documents at an indeterminate time in the future, and producing interrogatory responses that have not been properly certified.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Defendants have not carried their burden to show that the requests are not relevant.[5]**

Having found that Plaintiffs met the threshold showing of relevance, the Court now determines whether each Defendant has met its burden to show why the requests are not relevant.

### 1.      Defendant Airborne

#### a.      Requests for Admissions (RFAs)

Defendant argues that RFAs 1, 2, 6, and 7 are not relevant to whether Airborne issued the 40 million restricted shares in conformance with the intellectual property agreement. But the claims against Airborne also include fraudulent misrepresentation in connection with the issued shares. Thus, whether Defendant Kabilafkas was the one making decisions for Airborne (and whether he controlled all the Airborne shares) and whether the shareholders knew this is relevant.

As to RFA 5, Defendant argues this request predates the time when Plaintiffs became Airborne stockholders. While this is true, this RFA is relevant to the way in which the alleged fraud was able to be carried out.

The RFAs are also relevant to punitive damages.

#### b.      Interrogatories (ROGs)

Defendant argues that ROG 3 refers to Thai shareholders of Ample-Tee and falls outside the scope of this case. But the request is relevant to the way in which Airborne (which was formerly Ample-Tee) conducted the alleged larger fraudulent scheme giving rise to the instant complaint.

Defendant argues that ROG 4 refers to promotional campaigns and that the complaint does not allege Plaintiffs were influenced by the promotions at all. Yet, the complaint does allege that Airborne was sending positive news to keep Plaintiffs calm about their restrictions and give them hope about the future of the company. *See* Complaint ¶ 80. This is certainly part of the alleged fraudulent conduct involving Airborne.

Defendant provides no argument as to ROG 5.

The ROGs are also relevant to punitive damages.

---

[5] The Court also finds that the requests are proportional to the needs of the case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c.  Requests for Production of Documents (RFPs)

Defendant argues RFPs 6, 7, and 8 seek disclosure of the terms of the business deals that Airborne made with non-Apcentive partners, which has no bearing on this case. The Court finds that this information is relevant to the scope of the alleged scheme and relevant to punitive damages.

As to RFPs 11 and 15–18, Defendant argues that Plaintiffs have not provided any reasons as to why these requests are relevant. As explained above, the Court already found that the arguments in their motion and the language of their requests establish that threshold showing. Airborne does not attempt to show why they are not relevant in their response. Nevertheless, the Court finds that these requests are relevant to the scope of the alleged scheme and to punitive damages.

### 2.  Apcentive

### a.  Requests for Admissions (RFAs)

Defendant argues that RFAs 1 and 2 are not relevant as they request information about the relationship between Kabilafkas and Apcentive (as opposed to Airborne) and that not even the SEC alleges that there was a relationship between these two. But the SEC does allege some connection. *See* SEC Compl. ¶ 55. In addition, these requests are relevant to the fraud claim and to punitive damages.

### 3.  Daniels

### a.  Requests for Admissions (RFAs)

Defendant argues that RFAs 8–9 and 11–12 are not relevant as they seek information regarding Kabilafkas' control over Daniels (and, thus, Airborne), which is at play in the SEC complaint but not in the instant complaint. However, these requests are relevant to the claims of fraud, breach of fiduciary duty, and intentional interference with contractual relations. They are also relevant to punitive damages.

### b.  Interrogatories (ROGs)

Defendant argues that ROG 4 requests information regarding Daniels' role at Airborne, which is not relevant to the complaint. The Court disagrees, as Daniels' role at Airborne is

relevant to the claims of fraud and breach of fiduciary duty. The request is also relevant to punitive damages.

### c.      Requests for Production of Documents (RFPs)

Defendant argues that RFPs 2 and 4 seek communications regarding Daniels' transfer of Airborne shares, which are at issue in the SEC complaint but not in the instant complaint. But these requests are relevant to all the claims against him and to punitive damages.

### 4.      Kabilafkas

### a.      Requests for Admissions (RFAs)

Defendant argues that RFAs 5–11 seek information regarding Kabilafkas' control of Airborne shares, which are at issue in the SEC complaint but not in the instant complaint. But these requests are relevant to all the claims against him and to punitive damages. As to RFA 11, this request is relevant to punitive damages.

### b.      Interrogatories (ROGs)

Defendant argues that ROG 3 seeks information regarding shares in Ample-Tee when Ample-Tee is not relevant to the instant claim. The Court finds this request is relevant to the aiding and abetting claim and to punitive damages.

### c.      Requests for Production of Documents (RFPs)

As to RFPs 2 and 6, Defendant makes the same argument as that in ROG 3. The same ruling applies here.

As to RFPs 3 and 5, Defendant does not appear to argue that the request is irrelevant—just that it is overbroad. As explained below, this objection is waived.

The Court is mindful of the arguments made by Defendants Kabilafkas and Daniels as to the potential consequences of not upholding the relevance (or proportionality) objections. Simply stated, these two Defendants will need to rely on their assertion of the Fifth Amendment, which could have adverse consequences for trial purposes. But the Court notes it is premature at this juncture to assume that will be the case. Whether the district court will allow into evidence the introduction of matters as to which Defendants Kabilafkas and Daniels have asserted the Fifth

1    Amendment is a matter that will likely be resolved through motions *in limine*. Ultimately, this is

2    not a matter that factors into whether the requests are relevant.

3         **C.    Defendants' remaining objections are overwhelmingly boilerplate.**

4         While the Court notes that Defendants only defended their relevance and proportionality

5    objections, *all* objections lodged to the discovery requests in question are good examples of

6    boilerplate objections. That is, Defendants make no effort to craft any of their discovery

7    responses to be specific to the individual request to which they are responding. Thus, the

8    remaining objections (except those relating to privilege as discussed below) are waived.

9              **1.    Attorney-Client Privilege**

10        When a party withholds information otherwise discoverable by claiming that the

11   information is privileged or subject to a protection as trial-preparation material, the party must: (i)

12   expressly make the claim; and (ii) describe the nature of the documents, communications, or

13   tangible things not produced or disclosed—and do so in a manner that, without revealing

14   information itself privileged or protected, will enable other parties to assess the claim. Fed. R.

15   Civ. P. 26(b)(5)(A).

16        It is undisputed that Defendants did not serve a privilege log along with their responses.

17   The advisory committee notes to Rule 26(b)(5) make clear that withholding otherwise

18   discoverable materials on the basis that they are privileged or subject to the work-product

19   doctrine without notifying the other parties by describing the nature of the information so as to

20   enable them to assess the claim "may be viewed as a waiver of the privilege or protection." Fed.

21   R. Civ. Pro. 26(b)(5) advisory committee's note. The advisory committee comments also indicate

22   that if it appears that complying with the privilege log requirements presents an undue burden, a

23   party may seek relief through a protective order. *Id*. Defendants did not move for a protective

24   order to relieve them of the obligation of providing a privilege log.

25        Nonetheless, the Ninth Circuit has "reject[ed] a *per se* waiver rule that deems a privilege

26   waived if a privilege log is not produced within Rule 34's 30-day time limit." *Burlington N. &*

27   *Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

28   Instead, the Ninth Circuit has instructed courts to look the following factors in determining

whether a waiver has occurred: (1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged;" (2) "the timeliness of the objection and accompanying information about the withheld documents;" (3) "the magnitude of the document production;" and (4) "other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard." *Id*. In evaluating these factors, the court is directed to apply them "in the context of a holistic reasonableness analysis" and not in a "mechanistic determination of whether the information is provided in a particular format." *Id*.

First, the objections themselves do not provide any explanation as to why the information sought may be privileged. Yet, given the parallel SEC case and the prospect of a criminal action, it would be logical to conclude that some of these requests are privileged. Second, the objections were made within the 30-day period outlined in Rule 34. Third, the court has no indication of the magnitude of document production in connection with these requests. Finally, there are circumstances present which indicate discovery as to some of these matters may be unusually hard in this case; these include the parallel SEC action and the potential for criminal charges. The balance of the *Burlington* factors weighs against finding a waiver occurred under these circumstances. In addition, viewing these factors in the context of "holistic reasonableness" the Court would be uneasy to find waiver given the potential criminal repercussions. While Defendants certainly could have (and should have) produced a privilege log under Rule 34, the Court will order the parties to meet and confer within seven days of this Order and provide a privilege log as to any privilege claimed within 30 days of this Order.

## 2.  Fifth Amendment Privilege

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend V. "This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

While the express language of the provision seemingly limits the right against self-incrimination to the criminal context, the Fifth Amendment's protections have been deemed to

apply to civil proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Thus, the Fifth

Amendment's protections against self-incrimination can be asserted in any proceeding, be it civil,

criminal, administrative, judicial, investigative, or adjudicatory. *Kastigar v. United States*, 406

U.S. 441, 444 (1972). However, in the civil context, the invocation of the privilege is limited to

those circumstances in which the person invoking the privilege reasonably believes that his

disclosures could be used in a criminal prosecution or could lead to other evidence that could be

used in that manner. *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995). Therefore, the

"privilege against self-incrimination does not depend upon the likelihood, but upon the possibility

of prosecution" and also covers those circumstances where the disclosures would not be directly

incriminating but could provide an indirect link to incriminating evidence. *United Liquor Co. v.

Gard*, 705 F.2d 1499, 1501 (9th Cir. 1983).

Here, all defendants claim the Fifth Amendment privilege. Plaintiffs argue that no

Defendant can claim this privilege. The Court finds that not *all* Defendants can do so. For

example, corporate defendants are not entitled to such privilege. *Braswell v. United States*, 487

U.S. 99, 102 (1988). As noted already, there is a parallel SEC case which includes Defendants

Daniels and Kabilafkas. As a result of that case, the United States in the Central District of

California is investigating the matter and has presented evidence to the grand jury.[6] Thus, the

possibility of prosecution against these two Defendants is evident. This is not the case with the

remaining Defendants. In fact, given Defendants' responses to the motions and the arguments

presented in court, it appears Defendants concede this point as they only argue the privilege

applies to Daniels and Kabilafkas.

### D.     Rule 37 Fees

As discussed above, the motions involve two categories of discovery—that which is

related to the SEC case and that which is not. Defendants produced discovery—after these

motions were filed—as to the requests that did not involve the SEC action.

---

[6] The Court has read the Notice of Evidentiary Objections to James Sanders' Declaration at ECF Nos. 92 and 93. The Court does not see why (at this procedural posture) it should resort to the Federal Rules of Evidence and make determinations as to the veracity or reliability of these statements. Attorneys have a duty of candor to the court to be truthful and to only provide information to the court which is reasonably reliable.

The Court starts with the discovery requests that do not relate to the SEC case. As alluded to above, Fed. R. Civ. P. 37(a)(5) requires the imposition of fees if the disclosure or requested discovery is provided after the motion was filed unless certain exceptions described at Fed. R. Civ. P. 37(a)(5)(i)–(iii) apply. As to these requests, the Court will grant fees as it does not find that Defendants' conduct was substantially justified or that awarding fees would be unjust. The Court finds that Defendants' objections to these requests were lodged as a bargaining chip to get Plaintiffs to withdraw the requests relating to the SEC-related discovery. This is improper. This is clear based on the fact that Defendants ultimately produced discovery as to this category of requests, indicating to the Court that all previous objections were not lodged in good faith.[7]

As to the SEC-related discovery, the Court is mindful of the concerns at hand (as discussed at length during the hearing), especially as to specific Defendants' desire to avoid having to rely on a Fifth-Amendment privilege claim. The Court finds that the conduct was substantially justified given the concerns at hand.

A rough calculation reveals that as to the discovery requests propounded on Defendants Airborne and Kabilafkas, 50 percent of the requests involve the SEC matter while the other 50 percent do not. As a result, Defendants Airborne and Kabilafkas shall pay the 50 percent of the reasonable fees incurred in bringing this motion.

As to the discovery requests propounded on Defendant Daniels, approximately 40 percent of the requests involve the SEC matter while the other 60 percent does not. As a result, Defendant Daniels shall pay the 60 percent of the reasonable fees incurred in bringing this motion.

As to the remaining Defendants (i.e., Apcentive, Warren, Marius and Jason De Mos, and Harris), none of the requests involved the SEC matter. As a result, these Defendants will bear the entire cost of having to bring this motion.

The Court is mindful that many of these motions are duplicative in nature. As a result, the Court directs the parties to meet and confer within seven days of this Order to come to a resolution on what a fair and reasonable fee reimbursement would be.

---

[7] No longer did Defendants stand on relevance or proportionality grounds, the requests previously objected to on the basis of vagueness ceased to be vague, and no privilege appears to have been applicable.

1

**IV.    Conclusion**

2         **IT IS THEREFORE ORDERED** that ECF Nos. 66–73 are **GRANTED IN PART** and

3  **DENIED IN PART** consistent with this Order.

4         **IT IS FURTHER ORDERED** that within seven days of this Order, the parties must meet

5  and confer as to matters outlined in this Order.

6         **IT IS FURTHER ORDERED** that as to the SEC-related discovery, Defendants are to

7  produce discovery and/or privilege logs within 30 days of this Order.

8         **IT IS FURTHER ORDERED** that as to the requests that do not relate to the SEC case,

9  supplementary discovery (should Defendants agree to supplement discovery) shall be due within

10 30 days of this Order. In the event Defendants choose not to supplement, Plaintiffs are free to file

11 a new motion.

12

13        DATED: January 7, 2022.

14        _____

15        BRENDA WEKSLER
          UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28