UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARIA TSATAS, et al., | Case No. 2:20-cv-02045-RFB-BNW |
| Plaintiffs, | **ORDER** |
| v. | |
| AIRBORNE WIRELESS NETWORK, INC., et al., | |
| Defendants. | |

Before the Court is Defendants' Motion for Case-Dispositive Sanctions. ECF No. 242. Plaintiffs responded (ECF No. 254), and Defendants replied. ECF No. 257. Because Defendants fail to establish that Plaintiff Leonidas Valkanas's purported misconduct threatens to interfere with the rightful decision of the case on its merits, the Court denies the Motion. The Court also denies Defendants' Objection (ECF No. 258) and Plaintiffs' Motion to Strike (ECF No. 261) as moot because evaluation of Defendants' proffered evidence—as well as Plaintiffs' objections—is not necessary for the Court's sanctions determination.

**I.   BACKGROUND**

This securities fraud case arises from a conversion of investors' restricted stock to a company whose shares ultimately plummeted to be worth less than a penny. *See generally* ECF No. 152. Plaintiffs, among others, invested in Apcentive, a developer of a fully meshed airborne network, through Plaintiff Leonidas Valkanas. *Id.* at 9. After Airborne purchased Apcentive's intellectual property, Plaintiffs' shares in Apcentive were exchanged for restricted stock in Airborne. *Id.* at 10. Though Airborne's shares were once valued at over $3 a share, over time its stock price plunged below one cent. *Id.* at 11–12.

Plaintiffs brought suit, claiming that the value of their investment was lost due to fraud and officers' breaches of their fiduciary duties, among other purported misconduct by Defendants. *Id.* at 14–22. They contend that Defendants concealed material facts about Airborne

and its operations to induce Plaintiffs and other investors to buy into the company. *Id.* at 14–16. Plaintiffs claim that, crucially, Defendants obscured the fact that other investors (Defendants included) had unrestricted shares in Airborne while Plaintiffs were stuck with stocks that could not be traded after Defendants dumped their shares. *Id.* at 14. Meanwhile, Defendants maintain that toxic financing was to blame for the plummeting stock price, not any sort of misconduct on behalf of Defendants. ECF No. 242 at 7.

Less than two weeks before discovery closed, Defendants moved for case-dispositive sanctions, claiming that Valkanas perjured himself during a deposition and intimidated a material witness who has since passed away. ECF No. 242. Concurrent with their opposition (ECF No. 254), Plaintiffs asserted evidentiary objections to Defendants' proffered evidence. ECF No. 255. Defendants responded to Plaintiffs' objections over a month later (ECF No. 258),[1] and Plaintiffs moved to strike the response because they contend it is a rogue filing. ECF No. 261. The Court held a hearing on the motions and objections on June 24, 2024. ECF No. 275.

## II.     ANALYSIS

Defendants seek case-dispositive sanctions under the Court's inherent authority,[2] arguing that Plaintiff Leonidas Valkanas committed misconduct that "irretrievably taint[s]" the proceedings and impedes the Court's ability to resolve the case on its merits. ECF No. 242 at 19–22. Defendants claim that Valkanas's perjury during a deposition and threats towards a material witness concealed evidence and prevented Defendants from learning the truth. *Id.*; ECF No. 257 at 14. But Plaintiffs contend that Valkanas's purported misconduct is peripheral to the merits of the case and that Defendants fail to articulate how the supposedly concealed evidence is central to either Plaintiff's claims or their defenses. ECF No. 254 at 14–18.

---

[1] Though ECF No. 258 is a response to Plaintiffs' evidentiary objections (ECF No. 255), the document is incorrectly coded on the docket as an "Objection/Appeal" of a magistrate judge ruling. *See* ECF No. 258. The document, in turn, is coded to require a ruling from the Court.

[2] Plaintiffs argue, in part, that Defendants' Motion should be denied for failure to meet and confer because the Motion alleges discovery misconduct, *i.e.*, lying at a deposition. ECF No. 254 at 9–13. However, Defendants do not bring a discovery motion pursuant to Rule 37, but rather seek relief under the Court's inherent power. ECF Nos. 242 at 6; 257 at 6.

District courts have inherent power to impose sanctions for "conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). The Ninth Circuit requires courts to consider five factors before imposing the harsh sanction of dismissal: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other party, (4) the public policy favoring the disposition of cases on their merits, and (5) the availability of less drastic sanctions. *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). Because the first two factors usually favor dismissal, while the fourth cuts against such a sanction, "the key factors are prejudice and availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

The Court must also find bad faith, or conduct tantamount to bad faith, for dismissal to be proper. *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001). And importantly, "[d]ue process concerns further require that there exists a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'" *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)).

The Court first discusses bad faith and the relation of Valkanas's alleged misconduct to the merits of the case. It then evaluates whether the five factors weigh in favor of dismissal.

### 1. Bad Faith

Case-dispositive sanctions imposed under a district court's inherent authority require a bad faith finding.[3] *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010). Defendants ask the Court to find that Valkanas acted in bad faith when he allegedly perjured himself during a deposition when stating that: (1) his broker's license was not suspended, but had simply expired; (2) he had never been sued by his clients; and (3) he did not tell Dmitrios Foussekis (who Defendants contend is a material witness) that the Royal Canadian Mounted Police came to his house for a criminal investigation. ECF No. 242 at 20. They

---

[3] The Ninth Circuit has not addressed whether bad faith must be found by a preponderance of the evidence or by clear and convincing evidence. *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).

submitted exhibits that purport to be texts between Valkanas and Foussekis, texts between Valkanas and Foussekis's son, and judgments against Valkanas from suits brought by his former clients. ECF No. 243-1 at 585–628, 675–744, 1118–31. According to Defendants, these documents establish that Valkanas falsely testified as to those three issues. *See* ECF No. 242 at 8–19. They also contend that Valkanas committed other misconduct including orchestrating this lawsuit to avoid liability for investors' losses, settling with Foussekis unbeknownst to the other parties, and threatening Foussekis to prevent him from coming forward. *Id.* at 7–12.

Plaintiffs assert numerous evidentiary objections to Defendants' exhibits, arguing that the documents are inadmissible hearsay, irrelevant, unauthenticated, and potentially prejudicial. ECF Nos. 254 at 13–14; 255 at 4–8. They also assert that regardless of the evidentiary issues, Valkanas did not perjure himself because the issues are not material to the case. ECF No. 254 at 14–18. If anything, Plaintiffs argue, the purported evidence could potentially put Valkanas's credibility at issue, at which point Defendants could impeach him at trial. *Id.* at 15.

Perjury can certainly constitute bad faith. *See, e.g.*, *Huntley v. City of Carlin*, No. 3:12-cv-00664-LRH, 2014 WL 4064027, at *6 (D. Nev. Aug. 15, 2014). However, the Court declines to rule on Plaintiffs' evidentiary objections because it need not consider them or decide whether Valkanas did, in fact, perjure himself (or commit other misconduct). As discussed further below, even if the Court were to find bad faith, the issues Defendants raise are peripheral to the merits of the case and the other considerations also do not weigh in favor of dismissal. Because consideration of the evidence is not pertinent to the Court's decision, the Court denies Defendants' Objection and Plaintiffs' Motion to Strike as moot.

### 2. Relation to Merits of the Case

The Court next considers whether there is a sufficient "relationship or nexus between the misconduct. . . and the matters in controversy in the case." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988). The Ninth Circuit considers this factor "the most critical criterion" in the analysis and the nexus must be such that the misconduct "interfere[s] with the rightful decision of the case." *Id.* at 381. When this standard is not met, imposing terminating sanctions "raises due process concerns." *Id.*; *see also Phoceene Sous-Marine, S.A., v. U.S. Phosmarine,*

*Inc.*, 682 F.2d 802, 803 (9th Cir. 1982) (finding entry of default for "deceiving the court on a matter wholly unrelated to the merits of the. . . case" "inconsistent with the requirements of due process").

Defendants claim that Valkanas precluded "the truth from coming to light" because he committed perjury and suppressed evidence. ECF No. 257 at 14. They assert that Valkanas's purported misconduct is relevant to causation and damages because had he not lied or prevented Foussekis from getting involved, they would have learned the truth and potentially explored alternative theories of defense. *Id.* at 13–15. Defendants posit that they lack information regarding who acted improperly, what misconduct (if any) caused Plaintiffs' damages, Foussekis's role, the details of a supposed settlement between Valkanas and Foussekis, and other facts that could have exculpated Defendants. *Id.* This concealed evidence, they contend, obfuscated alternative causation and damages theories. *Id.* Defendants submit, for example, that had Valkanas been truthful about his broker's license being suspended, they would have explored why Plaintiffs purchased shares through private placement rather than brokered transactions. *See id.*

Plaintiffs argue that Defendants fail to articulate how the apparently withheld evidence is central to any claims or defenses. ECF No. 254 at 17. They contend that none of Defendants' affirmative defenses relate to Valkanas's licensure, his past lawsuits, or his communications with Foussekis. *Id.* at 17–18. And Foussekis, Plaintiffs claim, is not a material witness—particularly because he was not listed as a person with discoverable information on any of the parties' disclosures. *Id.* at 16–17. Plaintiffs further assert that the alleged settlement between Valkanas and Foussekis is similarly unrelated to the merits of the case because it is unclear how Foussekis would have reimbursed the Plaintiffs when they paid Apcentive—not Valkanas—for their investment. *See id.*

The Court agrees that Defendants fail to establish a nexus between Valkanas's purported misconduct and the merits of the case. Though Defendants broadly assert that Valkanas prevented them from learning the truth, they do not sufficiently articulate what evidence they believe to have been concealed, how such evidence is central to the issues, who Foussekis was, why he was a material witness, and what exculpatory information Foussekis may have had that Defendants

cannot otherwise acquire and present in their defense. And while Defendants contend that Valkanas's lies about his licensing and former clients reveal that he orchestrated this suit to deflect blame, this (if true) does not threaten to interfere with the rightful decision of the case.

The parties, at bottom, simply have different theories of the case. On the one hand, Plaintiffs posit that Defendants fraudulently concealed facts about Airborne and its operations, took measures to artificially inflate Airborne's stock price, and sold their inflated stocks while Plaintiffs' shares were restricted—causing stock prices to plummet and Plaintiffs to lose money. *See generally* ECF No. 152. On the other hand, Defendants believe that Valkanas—a supposed unlicensed broker with a history of legal issues with clients—convinced Plaintiffs to invest in a risky company. ECF No. 242 at 7–11. Not wanting to face blame for investors' losses, Valkanas (according to Defendants) falsely claimed that Defendants committed fraud when in actuality, the company's stock prices plummeted due to toxic financing, not actions taken by Defendants. *Id.*

But unlike other cases in which case-dispositive sanctions were proper, Defendants fail to establish that (1) the entirety of Plaintiffs' claims arose from Valkanas's alleged misconduct, or (2) Valkanas's supposed suppression of evidence severely impairs Defendants' ability to defend themselves. To begin, the allegations that Valkanas is an unlicensed broker, that his former clients sued him, or that he chose the parties to sue in this case do not establish that he fabricated Defendants' purported fraud. Theoretically, these allegations could be true, *and* Defendants could have committed the fraud the Plaintiffs allege—they are not mutually exclusive. This, again, is simply a different theory of the case that Defendants can present at trial and is not akin to cases in which dismissal sanctions were warranted. *See, e.g.*, *Mayorga v. Ronaldo*, 606 F. Supp. 3d 1003, 1008 (D. Nev. 2022) (finding lesser sanctions insufficient where Plaintiff's counsel's misappropriated documents and their confidential contents had "been woven into the very fabric" of Plaintiff's claims); *Huntley*, 2014 WL 4064027, at *2–6 (holding that "nothing short of dismissal" was appropriate where Plaintiff blatantly concealed fact that shoulder injury giving rise to his entire personal injury claim preexisted the accident).

Defendants similarly fail to demonstrate that the allegedly concealed evidence impairs their ability to present a defense such that a rightful decision of the case is threatened. Defendants

do not elaborate on who Foussekis is aside from a "mutual friend" that Valkanas and another plaintiff would occasionally meet for coffee to talk about Airborne. ECF No. 242 at 8. But this snippet provides no context as to how Foussekis alone knew the truth or how he possessed information about toxic financing (apparently unknown to Defendants) that would offer an alternative, exculpatory explanation for what caused Plaintiffs' damages. Defendants can still present evidence on toxic financing and its impact on Airborne's stock prices in their defense.[4] This sets them apart from other cases where terminating sanctions were awarded for concealment of evidence critical to a party's defense. *See, e.g.*, *Anheuser-Busch*, 69 F.3d at 348–55 (finding Defendant's ability to defend itself severely impaired where Plaintiff falsely denied the existence of and suppressed evidence necessary for Defendant's financial analysis).

Dismissal is appropriate only when the complained-of activity is a "pattern of deception" that "threaten[s] to interfere with the rightful decision of the case" or makes it impossible to conduct a trial "with any reasonable assurance that the truth would be available." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). This standard is simply not met here. Though Valkanas's credibility is important in this case, "the ordinary adversary process of litigation is an adequate remedy" for his purported lies. *ChromaDex, Inc. v. Elysium Health, Inc.*, 535 F. Supp. 3d 906, 912 (C.D. Cal. 2021) (finding impeachment at trial an adequate remedy

---

[4] "Toxic financing is a form of predatory lending to microcap companies often struggling to obtain capital. A toxic lender provides financing in the form of convertible debt—that is, debt that can be converted into common stock, almost always at a discount to market price. The lender then converts and sells in large volumes, typically liquidating only a fraction of its debt holdings at a time to ensure that an entire tranche is sold before the next is converted at a discount to the new, still lower price. The influx of shares causes prices to plummet, the share dilution drives good faith investors out of the market, and the issuing microcap company, or 'issuer,' can no longer access legitimate financing, a fact that may be the death knell of its business operations." *Sec. & Exch. Comm'n v. Ibrahim Almagarby*, 92 F.4th 1306, 1312 (11th Cir. 2024) (internal citations omitted).

The fact that one person with an unclear relation to the case may have been prevented from sharing his understanding of why Airborne's stock prices declined does not deprive Defendants of their ability to present a defense. Defendants can presumably call witnesses to explain the existence of the loan and its terms as well as introduce evidence of the loan agreement and the lender's actions upon Airborne's default. It seems implausible that Foussekis—a person who was not a party to the lawsuit and was not listed as a person with discoverable information—had all the answers about why stock prices plummeted.

where perjured deposition testimony about cocaine use by Plaintiff's co-founders lacked nexus to fraudulent inducement and patent claims). Assuming—but not deciding—that Defendants' proffered evidence is admissible at trial, they can impeach Valkanas and allow the factfinders to draw inferences in assessing his credibility and deciding how much weight to give his testimony. This is sufficient "to protect the orderly administration of justice and the integrity of these proceedings." *Id.* (citing *Halaco*, 843 F.2d at 382).

### 3. The Five-Factor Test

As discussed above, even if the Court were to find bad faith, dismissal is not proper because there is not a sufficient nexus between Valkanas's alleged misconduct and the merits of the case. Consideration of the five factors outlined by the Ninth Circuit also demonstrates that the balance does not tip in favor of dismissal. Within these five prongs, "the key factors are prejudice and availability of lesser sanctions." *Wanderer*, 910 F.2d at 656. This is because the public's interest in expeditious resolution of litigation and the court's need to manage it docket usually favor dismissal, while the public policy favoring the disposition of cases on their merits cuts against it. *Id.* Yet, Defendants fail to prevail on either factor.

In terms of prejudice, Defendants contend that Valkanas prevented them from learning the truth. ECF No. 257 at 13–14. But despite these claims, Defendants fail to explain why they did not depose Foussekis prior to his death or why they did not move to compel disclosure of the purported settlement between Valkanas and Foussekis. And as the Court has already recognized, Defendants are still able to present their theory of the case and their toxic financing defense, obviating a threat to the Court's ability to decide the case on its merits. "[T]he element of prejudice [is] essential," because dismissal sanctions "violate due process when they are imposed 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'" *Wanderer*, 910 F.2d at 656 (quoting *Wyle*, 709 F.2d at 591). Defendants are not prejudiced simply because they assert that Valkanas committed misconduct.

Finally, less drastic sanctions—such as requiring Valkanas to sit for another deposition—are theoretically available. *See* ECF No. 254 at 8. But Defendants' ability to put Valkanas's credibility at issue at trial through cross examination (and potentially impeachment) is an

adequate remedy in and of itself. *ChromaDex*, 535 F. Supp. 3d at 912. This, coupled with the fact that Defendants did not ask for nor propose other sanctions, demonstrates that even lesser sanctions are not warranted. Given all these considerations, the Court denies Defendants' Motion.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Sanctions (ECF No. 242) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Objection (ECF No. 258) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (ECF No. 261) is **DENIED as moot**.

DATED this 26th day of November 2024.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE